AARON HEALY and Others, Plaintiffs, v. ISAAC BRANDON and Others, Defendants.

*Sales — implied warranty — invisible defect — when not covered by the warranty — expert testimony.*

Aaron Healy & Sons, who had bought of Isaac Brandon & Bros. certain articles described in a bought and sold note as Panama hides, found, upon an attempt being made to tan these hides, that it could not be done, and thereupon brought an action against the vendors to recover the damages resulting from an alleged breach of warranty. The complaint in this action alleged that the reason why the hides could not be tanned in the ordinary way was that they had been, before the sale, subjected to some process which made subsequent tanning impossible, and that, as the plaintiffs were informed and believed, the defendants did not, when they made the sale, know of the defect.

There was no question, however, but that the articles delivered were Panama hides, although upon a subsequent sale of them by the plaintiffs for the defendants' account the former realized less than one-half the purchase-price paid by them to the defendants therefor.

Upon an appeal from a judgment in favor of the defendants:

*Held*, that as the hides delivered were skins known as Panama hides, as no special warranty had been given that they could be tanned, as no fraud was claimed to have been committed by the defendants, and as the defendants were not manufacturers, the plaintiffs could not recover.

That an expert witness should not be allowed, no custom or usage to that effect having been alleged in the complaint, to testify that there were no skins called hides, or known as such by leather dealers, which had not the quality of being converted into leather by tanning.

The rule as to implied warranties considered.

Exceptions of the plaintiffs, Aaron Healy, A. Augustus Healy and Frank Healy, taken upon the trial of an action had at the New York Circuit before the court and a jury, at which the complaint was dismissed and the exceptions of the plaintiffs were directed to be heard in the first instance at General Term.

*Thomas G. Shearman* and *Everett P. Wheeler*, for the plaintiffs.

*James H. Bennett*, for the defendants.

Lawrence, J.:

The appellants, on the 19th of August, 1887, purchased 501 Panama hides of the respondents, at fourteen and a half cents

per pound. The contract between the parties is evidenced by Exhibit "A," which is as follows:

" PICKARD & ANDRESEN,

Brokers in Hides and Skins 89 Gold Street.

P. O. Box, 808.

NEW YORK, August 19, 1887.

Sold, for a/c Mess. Isaac Brandon & Bros., to Mess. A. Healy & Sons, 509 Panama hides, ex. "Newport," at Pier 42, N. R., at 14½c. pr. lb. cash, less 1% to be weighed up as they are.

PICKARD & ANDRESEN,

Brokers."

It appears, from the evidence in the case, that after this contract had been made, the plaintiffs received from the defendants certain articles, purporting to be hides, but which the plaintiffs now allege were not hides, as that term is known and used in the tanning and leather trade. The goods were duly weighed, as provided by the broker's note or contract, and the following receipt was signed by the plaintiffs:

"NEW YORK, Aug. 19, 1887.

Messrs. A. HEALY & SONS, 5 Ferry St.,

To ISAAC BRANDON & BROS., Dr.

35 Broadway.

TERMS: Net cash this day.

V. To 501 hides weighing 12,692 lbs., at 14½c........ $1, 840 34

Ex. S. S. "Newport," ⎰ Less 1% for cash.................. 18 40
Aug. 12, '87. ⎱
E. & O. E.
                                                    _____
                                                    $1, 821 94

Received payment, 23, 8, '87.

ISAAC BRANDON & BROS."

It also appears that there was a difference of eight skins in the amount delivered and the amount called for by the contract, but no point is made of this; and the shortage is not material in the disposition of the case. It is alleged in the complaint that all genuine hides possess certain inherent qualities which enable them to be converted into merchantable leather, and it was only such hides that, " at the time herein mentioned, the defendant professed to sell, no other hides having any value for tanning purposes."

It is further averred that when the plaintiffs purchased said 501 articles, they believed the same to be genuine hides, capable of being converted into merchantable leather, and purchased them for the sole purpose of converting them into merchantable leather; all of which facts were, as plaintiffs are informed and believed, known to the defendants at the time of the transaction. It is also alleged that, shortly after purchasing said articles, the plaintiffs attempted to convert them into leather by the usual process of tanning employed in such cases; and in the course of such process it was discovered that the said articles did not possess the qualities essential to enable them to be converted into merchantable leather, and that it was not possible for the plaintiffs, by any exercise of skill and labor, to convert them into merchantable leather, for the reason that, prior to said sale, the said articles had, as plaintiffs are informed and believed, been subjected to some treatment which deprived them of the said qualities. It is averred that the said defects could not have been discovered prior to the attempt to convert them into merchantable leather, except by chemical tests made by an expert, and there was nothing in their appearance which in anyway indicated such defects, and that the plaintiffs were ignorant of such defects at the time of purchase, and would not have purchased the said articles if they had known that they were not genuine hides; and, as plaintiffs are informed and believed, the defendants were ignorant of any such defects, and sold the said articles to the plaintiffs, supposing that they were genuine hides, and could be converted into merchantable leather in the usual way. It is further alleged that, after discovering the facts, the plaintiffs gave notice to the defendants of such facts, and offered to return the property purchased, and demanded repayment of the purchase-price, which was refused; and the plaintiffs thereupon gave notice to the defendants that they would sell the said articles for the account of the defendants, and that, pursuant to said notice, they did make a sale of the same for $794.09, which was the best price which could possibly be obtained for the same, and which was, in fact, much larger than the same were actually worth. It is also averred that the plaintiffs laid out and expended for carting and transporting, and for work, labor and services, in respect to said articles, certain sums of money. The action is brought to recover the damages alleged to have been sustained by

them by reason of the premises. .The defendants, by their answer, deny any knowledge as to the business of the plaintiffs, and deny that the defendants were engaged in the business of selling hides for tanning purposes, and, generally, they deny the material allegations in the complaint, upon which the alleged cause of action rests.

Most of the exceptions which were taken to the rulings of the justice at circuit relate to questions which were propounded for the purpose of establishing that the articles in question were not hides, and if those exceptions are not well founded it follows that the case was properly disposed of at the circuit. It is now perfectly well settled that in order to constitute a warranty upon a sale it is not necessary that the representations should have been intended by the vendor as a warranty, and that if the representation is clear and positive and not a mere expression of opinion, and the vendee understands it as a warranty, and relying upon it purchases, the vendor cannot escape liability by claiming that he did not intend what his language declared. It is also well settled that there is no distinction in principle between a representation as to the quality and condition of an article, and one as to its character, and that what would amount to a warranty in the one case is a warranty in the other. (See *Hawkins* v. *Pemberton,* 51 N. Y., 198; *White* v. *Miller,* 71 id., 118, and the cases cited.)

It will be seen, however, upon reference to those cases, and several others to be found in the reports, which hold the same doctrine, that they really proceed upon the fact that the article sold was a different thing from that which was contracted to be sold, and not the same in substance. In *Hawkins* v. *Pemberton (supra),* the article was sold as blue vitriol, sound and in good order; the article delivered was salzburger vitriol, composed of a small proportion of blue vitriol, the residue being green vitriol, EARL, Commissioner, in his opinion, at page 207, says: " The article sold, if it was known at all in market, was known by another name. It had only from seventeen to twenty-five per cent of blue vitriol in it. It was not an inferior article of blue vitriol, *but a different substance with a small admixture of blue vitriol.*" So, too, in the case of *White* v. *Miller,* ANDREWS, J., in delivering the opinion of the court, says, at page 129 and 130: " We think the modern doctrine upon the subject is reasonable and proceeds upon a just interpreta-

tion of the contract of sale.    A dealer who sells an article, describing it by the name of an article of commerce, the identity of which is not known to the purchaser, must understand that the latter relies upon the description as a representation by the seller, *that it is the thing described*, and this constitutes a warranty."

Applying the principles enunciated in these cases to the case at bar, we think the rulings of the justice at circuit were correct. It is alleged by the plaintiffs, in their complaint, and assumed on this argument, that the defendants were ignorant of the fact that the articles delivered were not hides.    No offer was made to show that the articles in question were not Panama hides, which was what the brokers sold note called for (see Exhibit A), nor was it offered to show that they were not ex. Newport, at Pier No. 42, North River.    There is no evidence in the case, and none was offered, to show that the defendants were guilty of fraud or deception.    The defendants were not manufacturers of the article sold, and they delivered exactly that which they contracted to sell, to wit, the articles purporting to be Panama hides, from the Newport, at Pier 42, North River.    Without attempting to reconcile all the decisions which have been rendered in the courts in this State, upon the subject of implied warranties upon the sale of goods, we think that the decision of the Court of Appeals, in the case of *Dounce* v. *Dow* (64 N. Y., 411), lays down the legal principle which controls this case, and sustains the view adopted by the learned justice before whom the cause was tried.    In that case, the defendant ordered of the plaintiff, a dealer in, but not a manufacturer of iron, ten tons of " XX pipe iron," to be used in the manufacture of castings for farming implements which required soft, tough iron.    Plaintiffs forwarded iron of the brand specified, and billed it as such, which was accepted by the defendant without testing, and a large portion used, when it was discovered to be hard and brittle and unfit for the required purpose.    In an action upon a note given for the purchase-money, wherein the defendant set up as a counter-claim the damages sustained by the use of the iron, it was held that there was a warranty of the character of the iron as " XX pipe iron," but not as to any certain quality of that brand, as the plaintiff could not be presumed to know the precise quality of every lot bought and sold by him, and that the plaintiff,

in the absence of fraud, was only bound to deliver iron of the specified brand, and that it was not enough that he knew the purpose for which it was required, to bind him to deliver the quality required; that the defendant should have exacted a specific warranty which would have survived the acceptance. CHURCH, Chief Justice, in delivering the opinion of the court, says, at page 415 : "There was no fraud, both parties suppose, doubtless, that the iron was first quality for the purpose for which it was intended, but it is not enough that the plaintiff knew such purpose. The defendant should have exacted a specific warranty, and then both parties would have acted understandingly. * * * Here both parties acted in good faith. The defendants ordered simply XX pipe iron, supposing that such iron was always tough and soft. The plaintiff forwarded the iron under the same impression. The iron proved to be brittle and hard, and the question is which party is to bear the loss. The plaintiff (in the absence of fraud) was only bound by his contract; which was to deliver XX pipe iron, and we are now assuming that such iron was delivered. If so, he was relieved from liability."

In the case at bar, both parties supposed the articles to be hides. The contract called for Panama hides. As already stated, there was no evidence offered to show that in point of fact the articles were not Panama hides. We think, therefore, that the defendants delivered and the plaintiffs received the articles which the one had sold and the other had purchased, and that under *Dounce* v. *Dow* (*supra*), no recovery could be had by the plaintiffs for the damages alleged to have been sustained by them. Again, even assuming that there was an implied warranty that the articles in question were suitable for the purpose for which the plaintiffs say they designed them, the fact that, upon a sale at auction in open market, the goods which were purchased for $1,840.34 brought the sum of $794.09, nine months after the original sale, goes far to show that the article could not be said, under any circumstances, to be entirely unmerchantable. However that may be, we are of the opinion that the rule of *caveat emptor* here applies, and there having been no fraud and no expressed warranty, the plaintiffs, after acceptance of the article, cannot be heard to say that they were not the articles which the plaintiff contracted to purchase, and which the defendant contracted to sell.

Almost all of the exceptions taken to the rulings of the court at circuit relate to evidence offered to show that the goods in question were not hides; and it necessarily results from the view which we have expressed that those exceptions are of no avail to the plaintiffs.

There was a further exception to the ruling of the court, striking out the answer of the witness Healy to the question, whether or not any skins are called hides in the trade, or known as such, which have not this quality of being converted into leather by the process you have described. The answer was "No, sir, not that I know of; never heard of any." We think there was no error in striking out this testimony, because the question was clearly improper under the rulings already made; and also because it called for the opinion of an alleged expert upon the meaning of a word which required no definition or explanation from an expert. The word "hide" is defined by Webster to be "skin of an animal, either raw or dressed, more generally applied to the undressed skins of the larger domestic animals, as oxen, horses," etc. There was no dispute of the fact that the articles delivered under the contract between the parties were skins. Indeed, the question itself designates them as skins. To allow an expert, under such circumstances, to say that there was a hidden meaning in the contract, no custom or usage having been pleaded in the complaint, would have been improper; and it was the duty of the court, upon its attention being called to the answer, by motion, to strike it out. The exception to the question as to the items of expenditure, which the plaintiffs sought to show increased the value of the goods, is, in our opinion, unavailing.

The result of our examination of this case is, that none of the exceptions are well taken, and that the defendant is entitled to judgment, with costs and disbursements.

VAN BRUNT, P. J., and O'BRIEN, J., concurred.

Judgment ordered for defendant, with costs and disbursements.