CROWN EMBROIDERY WORKS, Respondent, *v.* HARRY GORDON
and Another, Copartners, Doing Business as SUFFOLK
KNITTING COMPANY, Appellants.

First Department, January 16, 1920.

**Pleading — demurrer — affidavits — answer in action on contract
for manufacture and sale of woolen goods — defense that purchase
of yarn was prohibited by Federal government — answer not
stating defense — judicial notice.**

On a demurrer to a separate defense contained in an answer affidavits used
on a motion for an attachment should not be considered.

Where in answer to a complaint to recover for the failure of the defendant
to manufacture and deliver woolen goods to the plaintiff as agreed the
defendants, as a separate defense, allege in substance that before the time
for the complete performance of the contract had arrived and before the
remainder of the cloth to be delivered could be manufactured further
performance on the defendants' part became impossible as a consequence
of a regulation made by the War Industries Board, created by act of
Congress, by which delivery of yarn to the defendants by manufacturers
thereof was prohibited owing to the fact that the defendants had no con-
tract for the manufacture of cloth for the government and that said Board
took possession of and controlled all the yarn mills of the United States
and their products and prevented the delivery of yarn to the defendants, a
demurrer to the defense on the ground of insufficiency will be sustained,
for it is not alleged that the performance of the contract by the defendants
was forbidden or prohibited by executive proclamation or authority, nor
is it alleged that the government commandeered cloth of that description,
or forbade the use of yarn in the manufacture thereof under private
contracts.  The defense only shows that the action of the government
rendered it impossible for the defendants, who were not then in default
under their contract, from thereafter procuring yarn and does not show
that the further manufacture of cloth was prohibited, but merely that
they failed to procure the yarn to manufacture cloth for the plaintiff
before such action was taken by the government.

Mere inability to perform is no defense to the contract to manufacture
goods and particularly so when the law subsequently called into operation
was in force when the contract was made, so that action by the govern-
ment thereunder might have been foreseen.

*It seems*, however, that if it were contemplated by the contract that the
manufacturer should be obliged to purchase raw material thereafter and
the purchase was lawful when the contract was made, but became
unlawful thereafter, it would be a good defense.

It is not necessary to plead an act of Congress or a proclamation of the
President.

APPEAL by the defendants, Harry Gordon and another, from an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 5th day of August, 1919, sustaining the plaintiff's demurrer to the second separate and distinct defense contained in the defendants' amended answer.

*Ludwig M. Wilson,* for the appellants.

*Sidney J. Loeb* of counsel [*Harold R. Lhowe,* attorney], for the respondent.

LAUGHLIN, J.:

The hearing on the demurrer was brought on by a motion by plaintiff. Certain affidavits, evidently used on a motion for an attachment, are incorporated in the record and it is recited in the order that they were considered on the motion. That manifestly was improper and they must be disregarded.

The plaintiff alleges that it was engaged in manufacturing dresses in the borough of Manhattan, New York; that defendants were engaged in manufacturing knitted dress cloth at East Boston, Mass.; that on the 21st of May, 1918, plaintiff placed an order with defendants for 10,000 yards of different colored cloth, according to a sample submitted by defendants, at two dollars and fifty-five cents per yard, to be delivered at the plaintiff's place of business " in the months of June, July and August, 1918;" that defendants delivered 4,107½ yards of the goods pursuant to the contract and plaintiff paid therefor, but that defendants failed and refused to deliver the remainder; that the market price at the place of delivery and when delivery should have been made was four dollars per yard, and judgment is demanded for the difference between the market and contract prices. It is fairly to be inferred from the allegations of the complaint and the written contract thereto annexed, that this was an order for the manufacture of goods according to samples and not for the purchase of goods already manufactured. There was no agreement to deliver a specified quantity in any month and there is no allegation with respect to when the deliveries were made, or to the effect that defendants were in default prior to the last day for deliveries, specified in the contract. It must

First Department, January, 1920.        [Vol. 190.

be assumed, therefore, that defendants had until the last day of August to deliver the remainder.

The answer joins issue on some of the allegations of the complaint and for a first defense pleads a cancellation of the contract by plaintiff. In the second defense the defendants have attempted to plead inability to perform or impossibility of performance by operation of law, in that performance would have been illegal and would have subjected defendants to prosecution and fine and imprisonment, owing to lawful action by the Federal authorities incident to the war, in which the United States was then engaged. If sufficiently pleaded, that is a good defense. (*Jones* v. *Judd,* 4 N. Y. 411; *Heine* v. *Meyer,* 61 id. 171.) Since the defendants had until the last day of August to perform, if they have sufficiently shown that performance by them *on that day* was lawfully forbidden and would have been illegal, their defense must be deemed well pleaded, for they cannot be held liable for a breach of their contract on the theory that they might lawfully have performed before the time they contracted to perform. In the defense to which the demurrer was interposed, the defendants allege that the contract was for the *manufacture,* sale and delivery of the cloth by them; that it is manufactured by spinning woolen or worsted yarn; that when the contract was made they had adequate, subsisting contracts with various yarn mills for the yarn that would be required in manufacturing the cloth; that they proceeded to manufacture the cloth and manufactured and delivered approximately 4,700 yards; that it was expressly provided in the contract, among other things, as follows: " It is provided that we shall not be liable for delivery in case of quarantine, floods, fires, strikes, or from any cause beyond our control; " that before the time for the defendants to *complete performance* had arrived and before the remainder of the cloth could be manufactured and delivered and by reason of causes beyond the control of the defendants and without fault on their part, the manufacture thereof and further performance on their part became impossible and was excused and postponed in consequence of lawful regulations duly made by the War Industries Board, a government agency, created under the act of Congress of June 3, 1916, known as the National Defense Act (39 U. S. Stat. at

Large, 166, chap. 134), and acts amendatory thereof, by which the delivery of such yarn to the defendants by the yarn mills under contractual obligation with defendants therefor or by another yarn mill or source of yarn supply in the United States was prohibited owing to the fact that the defendants had no contract for the manufacture of cloth for the government and that said Board also by virtue of the powers conferred on it took possession of and controlled all of the yarn mills in the United States and their products and directed the distribution of all the woolen and worsted yarn within the United States and prohibited and prevented the delivery to defendants of the yarn which was then being manufactured for them as aforesaid or any other yarn "during the period of the National Emergency and until the requirements of the Government of the United States " and of those performing contracts with it were satisfied. The defendants then allege that they remained ready, able and willing to complete performance as soon as said prohibition ceased or was removed; and that before the time for complete performance arrived and within a reasonable time — evidently meaning after the removal of the prohibition — tendered full performance, which was refused.

It is thus broadly alleged, in effect, not only that defendants had taken the precaution to order the manufacture of the yarn they would require, but that if it had not been for the said action of the Federal authorities, it would have been delivered to them in ample time; and that while there yet remained time for them to manufacture the cloth, there was no market open or available to them for buying the yarn at home or abroad inasmuch as the delivery of such yarn to them by anybody was forbidden.

The learned counsel for the respondent contends that no facts showing the right of the government thus, in effect, to commandeer the yarn are pleaded. It is not necessary to plead the acts of Congress or the proclamations of the President. If the President was authorized to do the things it is, in effect, alleged he caused to be done through said Board, it was sufficient to allege that he thus caused them to be done. By section 120 of the act of Congress of June 3, 1916, the President was authorized in time of war or when

war was imminent, to commandeer manufacturing plants and material where the owner or those in charge refused or failed to accept and give preference to government orders and authority was conferred upon him to place such orders for any war necessity. Said section 120 also authorized the President to appoint a Board on Mobilization of Industries Essential for Military Preparedness. (39 U. S. Stat. at Large, 213, 214, § 120.) The act of Congress of August 10, 1917, chapter 53, section 10, authorized the President to requisition any supplies required for the maintenance of the army or navy or any other public use connected with the common defense, and by section 12 of that act he was authorized for any like purpose to take over and operate manufacturing plants. (40 U. S. Stat. at Large, 279, chap. 53, §§ 10, 12.) Under those statutes he could have seized and operated plants for the manufacture of yarn and all the yarn in the country or that came into the country and, since the greater includes the lesser, he could through a government agency duly created, as is here alleged, control its use. Counsel for the respondent makes the points that the facts pleaded are insufficient to show that the government lawfully took control of the yarn and prohibited delivery to defendants or that further performance by them became impossible and in support of that contention he relies principally on *Mawhinney* v. *Millbrook Woolen Mills, Inc.* (105 Misc. Rep. 99; affd., on opinion at Trial Term, 188 App. Div. 971). That case holds that the authority of the President as Commander-in-Chief of the military and naval forces is derived directly from the United States Constitution (Art. 2, § 2, subd. 1); that his executive acts must be authorized by Congress; and that making contracts even for war supplies is the exercise of his civil as distinguished from his military authority. It there appeared that the defendant after contracting to deliver to the plaintiff during May, June and July, 1917, one hundred pieces of woolen cloth and after delivering ten pieces and the time for delivery of the remaining ninety pieces had been extended until the latter part of October or the first part of November, *voluntarily* entered into contracts with the government in May, July, August and November of the same year to deliver large quantities of like cloth, but no priority order was given as authorized

by section 120 of the act of June 3, 1916, nor was the defendant's material on hand or its plant commandeered by the government until after the time for performance of its contract with the plaintiff as extended had expired. That case, although analogous in some respects, is not in point on the facts. The weakness of the defense here pleaded is, however, that it is not alleged that performance of the contract by the defendants was either forbidden or prohibited by executive proclamation or authority. It is neither alleged that the government commandeered cloth of this description nor forbade the use of yarn in the manufacture thereof under private contracts. The dilemma in which the defendants were placed by the action of the government was in rendering it impossible for them *thereafter* to procure yarn. They were not then in default under their contract and the further manufacture of the cloth was not prohibited, but they had failed to procure the yarn with which to manufacture the cloth, and it is not even alleged that the yarn could not have been procured before such action was taken by the government. Mere inability to perform is no defense to a contract to manufacture goods and particularly is this so where, as here, the laws subsequently called into operation were in force when the contract was made and such action thereunder might and should have been foreseen, although they were not called into operation until long after the contract was made. (See *Richards & Co., Inc.,* v. *Wreschner,* 174 App. Div. 487; *Labaree Co.* v. *Crossman,* 100 id. 499; affd., 184 N. Y. 586.) Doubtless if it was contemplated that the manufacturer would be obliged to purchase the raw material after making the contract and such purchase was lawful when the contract was made but became unlawful or was prohibited by law before the lapse of a reasonable time for the purchase thereof after making the contract, that would be a defense. That, however, is not the defense pleaded, for it is not alleged when the action of the government was taken, otherwise than that it was before the time for *complete performance* by defendants, which, for aught that appears, might have been on the last day on which the defendants were required to deliver the cloth.

These views also dispose of the defense in so far as it is

predicated on the clause of the contract relieving defendants from liability in case of " quarantine, floods, fires, strikes or from any cause beyond " their control and render it unnecessary to decide whether the general provisions thereof are, under the *ejusdem generis* rule, limited by the particular words preceding them.

It follows that the order should be affirmed, with ten dollars costs and disbursements, with leave to the defendants to serve an amended answer on payment of said costs and ten dollars costs at Special Term.

CLARKE, P. J., SMITH, MERRELL and PHILBIN, JJ., concur.

Order affirmed, with ten dollars costs and disbursements, with leave to defendants to serve an amended answer on payment of said costs and ten dollars costs of motion at Special Term.