LUCY E. DOHERTY, Appellant, *v.* MONROE ECKSTEIN BREWING COMPANY, a Domestic Corporation, Respondent.

First Department, December 2, 1921.

Landlord and tenant — leases — construction and operation — lease of premises for " saloon business " only, terminated by operation of law by Eighteenth Amendment and National Prohibition Act — no distinction between contract execution of which is void at time of making and one which becomes unlawful by subsequent change of law.

A lease of premises, to be used in the " saloon business " only and primarily for the sale of intoxicating liquors and lager beer, was terminated by operation of law on the taking effect of the Eighteenth Amendment to the Federal Constitution and the National Prohibition Act, and, therefore, the tenant is no longer liable thereunder in an action for rent.

There is no distinction in principle between a contract the execution of which is unlawful at the time it is made and which is void and one where by a subsequent change of law further performance of the contract becomes unlawful.

APPEAL by the plaintiff, Lucy E. Doherty, from an order and determination of the Appellate Term of the Supreme Court, First Department, entered in the office of the clerk of the county of New York on the 11th day of April, 1921, modifying a judgment of the Municipal Court of the City of New York, Borough of Manhattan, Sixth District, in plaintiff's favor.

*Levy & McMahon* [*Nathan D. Levy* of counsel], for the appellant.

*Alfred B. Nathan,* for the respondent.

LAUGHLIN, J.:

The action is to recover rent at the rate of forty-five dollars per month for the first nine months of the year 1920, pursuant to the terms of a lease of premises on Staten Island made by the plaintiff to the defendant on the 1st of February, 1914, for the term of ten years. At the time of the execution of the lease the defendant was in possession of the premises under a former lease and was using the same for saloon purposes

pursuant to a liquor tax certificate issued under the State law. The lease in question contained a provision with respect to the use of the premises as follows: "It being expressly agreed, that the only business to be carried on in said premises is the saloon business, being the same premises now occupied by the party of the second part." It also contained a covenant on the part of the tenant to indemnify and save its landlord harmless from any loss, damage or injury resulting from any action or suit under the Civil Damage Act, so called, or any similar act, in consequence of the use of the premises by the tenant as "a saloon or place for sale of malt, strong, spirituous, or intoxicating liquors or beverages," and a covenant on the part of the tenant to pay any judgment that might be recovered against the landlord in such an action. The tenant while occupying under the former lease sold malt and spirituous liquors as authorized by the State law, and the sale thereof was plainly contemplated, and use of the premises for those purposes was clearly authorized by the lease in question. The Eighteenth Amendment to the Federal Constitution and the National Prohibition Act (Act of Congress, October 28, 1919, being 41 U. S. Stat. at Large, 305, chap. 85; Id. 308, chap. 85, tit. 2, § 3) prohibiting the sale of beer and such liquors took effect on the 29th of January, 1920. (40 U. S. Stat. at Large, 1941, 1942; 41 id. 322, chap. 85, tit. 3, § 21.) The adoption of the Eighteenth Amendment by the requisite number of States was duly promulgated by the Secretary of State on the 29th of January, 1919, and it was, therefore, inevitable that it would take effect in one year thereafter. In the month of October, 1919, when its liquor tax certificate expired, the tenant notified the landlord that it intended to abandon the premises in the month of January thereafter owing to the fact that the law prohibited the continuance of the saloon business; and thereafter the tenant obtained a renewal liquor tax certificate until February and subsequently and before the 1st of January, 1920, abandoned the saloon business and vacated the premises and on January second tendered a surrender thereof to the plaintiff, who refused to accept the same. Defendant, until the 1st of January, 1920, paid the monthly installments of rent as they fell due but did not pay the rent for the month of January, 1920, or for

any month thereafter. In the Municipal Court plaintiff recovered for the nine months. The modification made by the Appellate Term confines the recovery to the month of January, 1920. (See 115 Misc. Rep. 175.)

Plaintiff contends that the lease remained unaffected by the prohibition contained in the Eighteenth Amendment and National Prohibition Act against the sale of intoxicating liquors for beverage purposes, and that the Appellate Term erred in modifying the judgment. At the time the lease was made defendant was engaged in manufacturing and selling beer under that name and of the former standard for beverage purposes and this became unlawful on and after January 29, 1920. When the lease was made the sale of intoxicating liquors and lager beer was lawful and plainly it was primarily for the sale of those beverages that the defendant leased the premises for it was then lawfully engaged in making and selling beer. This is perfectly evident from the fact that the defendant had been a tenant of the premises using them for those purposes under liquor tax certificates issued under the authority of the State for upwards of twenty years; and that this was mutually intended by the parties fairly appears from the recitals in the damage clause of the lease wherein the word " saloon " is expressly treated as synonymous with " place for sale of malt, strong, spirituous, or intoxicating liquors or beverages." On the theory that it might be held that there was an ambiguity in the meaning intended by the parties by " saloon business " as used in the lease, the tenant offered evidence to show that the landlord refused to rent the premises for any business other than such as had been theretofore conducted thereon by the tenant. That evidence was excluded on the theory that the provisions of the lease are not ambiguous, and in that ruling we concur. The evidence shows that the main or principal business of a saloon is the sale of lager beer and whisky and that incidental to that business, cigars, cigarettes; seltzer water and other soft drinks are sold, and that such was and had been the business conducted by the tenant on the premises in question. In these circumstances, there can be no doubt that it was contemplated when the lease was executed that the tenant should have the right to continue the business as theretofore

conducted by it. The saloon business being the only business for which the tenant was authorized to use the premises, the landlord would have been entitled to enjoin any other use thereof. (*Steward* v. *Winters,* 4 Sandf. Ch. 587; *Gillian* v. *Norton,* 33 How. Pr. 373; *Weil* v. *Abrahams,* 53 App. Div. 313; *Sullivan* v. *Monahan,* 123 Ill. App. 467.) This distinguishes the case at bar from *Kerley* v. *Mayer* (10 Misc. Rep. 718; affd., 155 N. Y. 636) in which it was held that the restriction related only to the character of the saloon business if conducted. It will not do in these circumstances to hold that the lease remained unaffected by the Eighteenth Amendment and the National Prohibition Act on the theory that the tenant lawfully might continue to conduct on the premises an *incidental* part of the saloon business. When, therefore, on the 29th of January, 1920, the principal use of the premises for saloon purposes became unlawful, the lease became terminated by operation of law in the absence of any agreement between the parties for a different use of the premises thereunder. (*Heine* v. *Meyer,* 61 N. Y. 171; *Adler* v. *Miles,* 69 Misc. Rep. 601; *Kaiser* v. *Zeigler,* 115 id. 281; *Stratford, Inc.,* v. *Seattle Brewing & M. Co.,* 94 Wash. 125; *Mayor* v. *Putnam,* 103 Ga. 110; *Richter* v. *Lightston,* 161 Cal. 260; *Hooper* v. *Mueller,* 158 Mich. 595; *Heart* v. *East Tennessee Brewing Co.,* 121 Tenn. 69; *Harper* v. *Young,* 123 Ark. 162; *Kahn* v. *Wilhelm,* 118 id. 239; *McDougall* v. *Giacomini,* 13 Neb. 431; *Brunswick-Balke-Collender Co.* v. *Seattle Brewing & M. Co.,* 98 Wash. 12; *Crown Embroidery Works* v. *Gordon,* 190 App. Div. 472; *Boret* v. *Vogelstein & Co., Inc.,* 188 id. 605.) In some jurisdictions it has been held that a lease of premises for saloon purposes does not confine the use of the premises to the selling of intoxicating liquors, and that since after the sale thereof was prohibited, soft drinks and cigars and cigarettes, which are usually sold in saloons, may still be sold, the lease was not terminated by operation of law. (See *O'Byrne* v. *Henley,* 161 Ala. 621; *Hecht* v. *Acme Coal Co.,* 117 Pac. Rep. 132; 19 Wyo. 18; *Matter of Bradley,* 225 Fed. Rep. 307.) The Supreme Court of Alabama, however, in a later case, distinguished its decision in *O'Byrne* v. *Henley* (*supra*) and held that a lease which provides that the premises were to be used for occupation as a bar and not otherwise, contemplated the sale of intoxi-

cating liquors and that when that became illegal, the lease was terminated. (*Greil Bros. Co.* v. *Mabson,* 179 Ala. 444.) It is well settled that a lease of premises for an illegal purpose is void. (*Edlemuth* v. *McGarren,* 4 Daly, 467; *Updike* v. *Campbell,* 4 E. D. Smith, 570; *Romano* v. *Bruck,* 25 Misc. Rep. 406; *Adler* v. *Miles, supra; Kaiser* v. *Zeigler, supra.* See, also, Real Prop. Law, § 231.) There is no distinction in principle on this point between a contract the execution of which is unlawful at the time it is made and which is void under the authorities cited and one where by a subsequent change of law, further performance of the contract becomes unlawful. (See *Heine* v. *Meyer, supra.*) The Appellate Term, in an opinion written by Mr. Justice WAGNER, correctly met and answered all of the points presented by the appellant, and were it not for the importance of our decision as a precedent, we would not have deemed it necessary to restate and elaborate upon the principles of law and cite the authorities deemed decisive of the issues between the parties.

It follows that the determination of the Appellate Term should be affirmed, with costs.

CLARKE, P. J.; DOWLING, SMITH and PAGE, JJ., concur.

Determination affirmed, with costs.