RAILROAD STORES, INC., Plaintiff, v. FABYAN & CO., INC., Defendant.

City Court of the City of New York, January, 1923.

Landlord and tenant — lease for specified purpose — necessity for special permit under Code of Ordinances of the city of New York for wholesale drug and chemical supply business — when business unlawful, lease void.

Defendant leased from plaintiff a store in a building in the city of New York for a term of years and covenanted that it "would not, without the written

consent of the landlord, make any alterations therein nor use nor suffer to be used the whole or any part thereof for any purpose other than for the sale and storage of pharmaceuticals and drugs and for the general wholesale drug business." The Code of Ordinances of the city of New York requires a special permit for operating a wholesale drug store or drug and chemical supply house and provides that no permit shall be issued for such purpose in any building which is occupied as a workshop or factory, except such workshop or factory is incident to the business of the applicant, or except in buildings constructed of fire-resisting materials throughout. The building in question was not of fire-resisting construction and was occupied in part by another tenant whose business was in no way connected with the business of defendant. Defendant was denied a special permit for the operation of his business in the leased premises. *Held,* that as the purpose for which the property was to be used, as specifically defined in the lease, was prohibited by law, the lease is void and judgment is directed for defendant.

ACTION on a lease.

*Frank E. Stripe,* for plaintiff.

*Charles Firestone,* for defendant.

MEYER, J. On or about October 29, 1921, the plaintiff leased to the defendant by an instrument in writing the southerly store and the basement thereunder in the building and the premises known and designated as Nos. 457–461 West Broadway, in the borough of Manhattan, city of New York, for the term of four years and fifteen days, beginning January 15, 1922, and ending on the 31st day of January, 1926, at a rental of $4,000 for the years 1922 and 1923 and $4,300 for the balance of the term, to be pa'd in equal quarterly payments on the first days of January, April, July and October of each year with the exception of the last payment. By paragraph 3 of said lease among other things the tenant and its legal representative covenanted that it " would not, without the written consent of the landlord, make any alterations therein nor use nor suffer to be used the whole or any part thereof for any purpose other than for the sale and storage of pharmaceuticals and drugs and for the general wholesale drug business." The Code of Ordinances of the city of New York (Chap. 10, art. 24, § 270) provides as follows: " No person shall maintain or operate a wholesale drug store or drug and chemical supply house, as defined in § 1 of this chapter, without a special permit." Section 1, subdivision 44, of the same chapter defines a wholesale drug store or drug and chemical supply house as follows: " Wholesale drug store or drug and chemical supply house, a building or place used for receiving, handling, storing or keeping for sale in large quantities medicinal preparations, proprietary articles, drugs, chemicals, oils, volatile solvents and other substances which alone or in combination with other sub-

stances or articles are of a highly combustible, inflammable or explosive nature." Chapter 10, article 24, section 272, of the Code of Ordinances of the city of New York provides as follows: " Restrictions. No permit shall be issued for a wholesale drug store or drug and chemical supply-house in any building * * * (c) which is occupied as a workshop or factory, except such workshop or factory is incident to the business of the applicant; or except in buildings constructed of fire-resisting materials throughout, and when the portion of such building occupied by the applicant is separated from the rest of the building by fireproof walls and floors." The testimony shows that the building is five stories high, that the walls are constructed of brick, and the beams, girders and floors are constructed of wood with plaster ceilings. A portion of the building is occupied by the business of another tenant which is not incident to the business of the applicant nor in any way connected therewith. Said tenant is engaged in the business of printing or stamping upon silks, and as many as four persons are employed therein. An application for a special permit, as provided under chapter 10, article 24, section 270, of the Code of Ordinances of the city of New York, was filed with the proper authorities, and the application was denied on the ground that the premises did not conform to the provisions of chapter 10, article 24, section 272, subdivision c, of the Code of Ordinances of the city of New York, hereinbefore quoted. The question as to whether the building is suitable for the purposes intended by the lease has been passed upon by the fire commissioner, who is the proper authority to whom such application should be made. Code of Ordinances of the City of New York, chap. 10, art. 2, § 20. There is nothing contained in the evidence to justify this court in deciding otherwise. It will, therefore, be assumed that the business which the parties contemplated was to be conducted in this building was prohibited by law from being conducted there, and the only question that remains for determination is as to whether the lease is of such a character that the premises could not be used by the tenant for any other purpose than that stipulated in the written document. The lease specifically provides the nature of the business that is to be conducted there and the tenant covenanted that he would not use the same for any other purpose except with the consent of the landlord. It is, therefore, apparent that the intention of the parties was clear as to what use the premises were to be devoted during the term of the leasehold This purpose was prohibited by law not only by reason of the fact that the structure was not to be used wholly by the tenant, as provided for in the Code of Ordinances, but also because the building was not fireproof,

and this tenant, having no control over the other tenant in occupancy of a portion of the building, could not, even if it was so desired, make such alterations as to put the building in a fireproof condition. It is now well settled that an ordinance passed by the municipality has the effect of a statute. *Hart* v. *City Theatres Co.*, 215 N. Y. 322. It is also well settled that a plaintiff cannot recover if he is compelled to predicate his cause of action upon an illegal contract. *Miller* v. *Ammon*, 145 U. S. 421, 426; *Hart* v. *City Theatres Co.*, *supra*. It is equally well settled that a lease made for the use of premises for an unlawful purpose is void. *Adler* v. *Miles*, 69 Misc. Rep. 601; *Hart* v. *City Theatres Co.*, *supra; Markowitz* v. *Arrow Const. Co., Inc.*, 102 Misc. Rep. 532; *Kaiser* v. *Zeigler*, 115 Misc. Rep. 281. And this is true whether the statute making the use of the premises unlawful was in force at the t'me of the making of the lease (*Hart* v. *City Theatres Co.*, *supra*) or was passed after the lease became effective. *Doherty* v. *Eckstein Brewing Co.*, 198 App. Div. 708; *Saratoga County Bank* v. *King*, 44 N. Y. 87. The lease contains a further provision that the tenants will comply with all rules, orders, ordinances and regulations of the city and state and of any of their departments and bureaus, applicable to the premises. This provision has been held by the courts not to include structural changes (*Herald Square Realty Co.* v. *Saks & Co.*, 215 N. Y. 427) or extraordinary and unforeseen alterations (*May* v. *Gillis*, 169 N. Y. 330), or such as would be tantamount to the reconstruction of the building itself. *Warrin* v. *Haverty*, 159 App. Div. 840. As has heretofore been said, even were the tenant inclined to do these things and to attempt to rebuild the structure, there is nothing in the evidence in the case at bar to show that the landlord would have permitted him to do so or that the tenant occupying the other portion of the structure would not have objected to him entering upon his part of the leasehold in order to carry out such alterations. For these reasons I am constrained to hold that the lease is void and judgment is, therefore, directed for the defendant. Submit findings and decision.

Judgment accordingly.