CLIFTON SHIRTING CO., INC., Appellant, *v.* BRONNE SHIRT CO., INC., Respondent.

First Department, May 15, 1925.

Sales — contract for delivery " June, July, August "— delivery may be made any time until last day of last month — contract not to be construed as installment contract upon evidence of usage or custom — reversible error to refuse plaintiff's application to adjourn trial to enable it to rebut testimony as to usage or custom not pleaded — defense as to usage or custom is without merit.

*It seems,* that a contract for the sale of merchandise, which provides for delivery " June, July, August," will be satisfied by the seller if delivery is made at any time prior to the last day of the last month, and that it is improper to introduce evidence to show a custom or usage that under such a contract deliveries must be made proportionately during the three months specified.

It was prejudicial error for the court to refuse plaintiff's timely application to adjourn the trial for a reasonable time to permit it to procure witnesses to repudiate the testimony as to usage or custom, which was not pleaded, and upon which plaintiff claimed to have been taken by surprise. The action of the court deprived the plaintiff of its right to a fair trial upon the alleged usage or custom.

*It seems,* the defense as to usage or custom is without merit and was clearly interposed to avoid payment solely because of a falling market.

MERRELL and McAVOY, JJ., dissent, with opinion.

APPEAL by the plaintiff, Clifton Shirting Co., Inc., from a judgment of the Supreme Court in favor of the defendant, entered in

**240** CLIFTON SHIRTING CO., INC., *v.* BRONNE SHIRT CO., INC.

First Department, May, 1925. [Vol. 213

the office of the clerk of the county of New York on the 20th day of March, 1924, upon the verdict of a jury.

*Bondy & Schloss* [*Eugene L. Bondy* of counsel; *F. Sidney Williams* with him on the brief], for the appellant.

*Rogers & Sawyer* [*E. C. Rogers* of counsel], for the respondent.

BURR, J.:

The facts are sufficiently stated in the dissenting opinion of Mr. Justice MERRELL.

It has been repeatedly decided and laid down as a rule of law by this court that where a sales contract provides for delivery of merchandise by the use of words similar to those contained in this contract, to wit: " Delivery June, July, August," such words mean the seller has until the last day of the last month named in which to make delivery thereunder. (*Stern* v. *Wohl, South & Co.*, 212 App. Div. 154; *Bahnsen & Co., Inc.*, v. *Leaf*, 203 id. 618; *Crown Embroidery Works* v. *Gordon*, 190 id. 472; *Childs & Bro., Inc.*, v. *Hirsch & Co.*, 202 N. Y. Supp. 226; *Morel* v. *Stearns*, 37 Misc. 486; 43 id. 639.) The terms of the contract are not denied. In the light of the rule laid down by the court the meaning of the words used is entirely clear. It was, therefore, improper to allow defendant to give testimony to establish a custom or usage giving to such words an entirely different meaning particularly when no such custom or usage had been pleaded. (*Healy* v. *Brandon*, 66 Hun, 515; *Britton* v. *Ferrin*, 171 N. Y. 235, 242; *Ford* v. *Snook*, 205 App. Div. 194, 197; *Mutual Chemical Co.* v. *Marden, Orth & Hastings Co., Inc.*, 200 id. 121, 124; *Home Ins. Co.* v. *Continental Ins. Co.*, 180 N. Y. 389, 397; *Poland* v. *Hollander*, 62 Misc. 523, 525.)

" That usage or custom cannot be proved for the purpose of controlling rules of law or to contradict the agreement between the parties, is not and cannot be denied." (*Britton* v. *Ferrin*, *supra*, 242.)

" The effect of the evidence was to contradict the plain language of the policy, after its meaning had been settled by the construction of the courts. Usage cannot control law, nor change the legal meaning of a contract." (*Home Ins. Co.* v. *Continental Ins. Co.*, *supra*, 397.)

Because of the evidence of usage or custom introduced by defendant over objection of plaintiff the contract was twisted into an installment contract, although section 126 of the Personal Property Law (as added by Laws of 1911, chap. 571), known as the Sales of Goods Act, provides: " Unless otherwise agreed, the buyer of goods is not bound to accept delivery thereof by installments."

The refusal of plaintiff's timely application to adjourn the trial for a reasonable time to permit plaintiff to procure witnesses to rebut the testimony as to usage or custom not pleaded and by which plaintiff claimed to have been taken by surprise, deprived plaintiff of its right to a fair trial upon the alleged usage or custom and in itself requires a new trial.

I am of the opinion the defense is without merit and was clearly interposed to avoid payment solely because of a falling market.

The judgment should, therefore, be reversed and a new trial ordered, with costs to the appellant to abide the event.

CLARKE, P. J., concurs; DOWLING, J., concurs in the reversal on the last ground assigned; MERRELL and McAVOY, JJ., dissent.

MERRELL, J. (dissenting):

The action was brought by the plaintiff to recover damages alleged to have been sustained by the plaintiff by reason of the failure and refusal of the defendant to accept and pay for ninety pieces of shirtings, known as Russian cords. The plaintiff is a domestic corporation engaged in the business of importing and selling shirtings, and the defendant is also a domestic corporation engaged in manufacturing and selling shirts to the retail trade. Defendant's factory and principal place of business was at Hudson Falls, N. Y. The contract between the parties was in writing and was executed on March 29, 1920, and consisted of a confirmation of an order given by the defendant to the plaintiff. In the writtten order one hundred and fifty pieces of the fabric known as " Russian Cords " are embraced. Of these, sixty pieces, of about sixty yards to the piece, were in solid colors, and all of said sixty pieces were delivered to and paid for by the defendant. The remaining ninety pieces were of fancy designs, and these ninety pieces, it is claimed by the defendant, were not delivered within the terms of the contract. The contract provided that delivery should be made " June, July, August," and there was also indorsed upon the back of the contract and made a part thereof a provision that " Shipments made within a reasonable time after specified date of delivery shall constitute good delivery." The sixty pieces of Russian cords in plain colors first mentioned in the contract were delivered prior to the months specified for delivery and were delivered in the month of May, 1920. No part of the remaining ninety pieces was delivered during the months of June, July or August. On August 30, 1920, defendant wrote the plaintiff asking the plaintiff to kindly cancel defendant's order for the ninety pieces as yet undelivered. In the letter it was stated that the writer explained

**242** Clifton Shirting Co., Inc., *v.* Bronne Shirt Co., Inc.

First Department, May, 1925. [Vol. 213

to the plaintiff when he purchased the goods of plaintiff that defendant wanted to have them during June and July, and that on account of later delivery the defendant would be unable to use the goods. The plaintiff refused to cancel the order, claiming, under the terms of the contract, that it had all of the months of June, July and August in which to make delivery. Some correspondence then followed between the parties, the plaintiff insisting upon its right to deliver the goods in September under the provision of the contract that shipments might be made within a reasonable time after the specified date of delivery, whereas the defendant persisted in its refusal to receive the goods upon the ground that they had not been delivered as provided by the contract. The contract also contained the following provision: "Sample Pc. April." The defendant denied ever having received such sample, and as to the sample the court permitted the defendant, under plaintiff's objection and exception, to prove that by the expression, "Sample Pc. April," the parties meant and it was expressly agreed between them that as to the fancy designs of the Russian cords the plaintiff should furnish to the defendant swatches or samples of each particular design thereof for use of the defendant's agents and salesmen upon the road, and to enable the defendant to dispose of its shirts to the retail trade. The defendant gave evidence to show that in its business of selling shirts it employed some twelve traveling salesmen; that when these salesmen went out upon the road they carried samples of the shirts, and that it was also necessary for them to have swatches showing the different colorings and designs of the fancy goods from which the shirts were to be manufactured; and the defendant gave evidence, under objection and exception of the plaintiff, to show that under the understanding and express agreement of the parties samples of the fancy goods were to be furnished by the plaintiff to the defendant for use of the latter's salesmen as they went out to solicit orders early in the summer of 1920, and that without such samples they were unable to successfully approach the trade.

It was the contention of the plaintiff at the trial that the expression in the contract, "Delivery June, July, August," meant that the plaintiff might make delivery of the goods embraced in the contract at any time between the first day of June and the last day of August, and that under the decisions of the courts such expression in a contract meant what the plaintiff claimed. The court upon the trial permitted the defendant to prove, under the objection and exception of the plaintiff, that there was a well-known and universal trade custom as to the meaning of the expression, "Delivery June, July, August," and that under the

usage and custom of the trade such an expression in a contract meant that the goods embraced in the contract were to be delivered in each of the three months in about the proportions of one-third to each month. Four witnesses were sworn in behalf of the defendant, who were tradespeople engaged in selling textile fabrics, and all of them testified that where such an expression was used in a contract it always meant that the deliveries were to be made of approximately one-third of the goods in each of the months mentioned. The plaintiff, in rebuttal, swore three tradesmen, all of whom testified that there was a usage and custom in the trade and a well-understood meaning of such an expression, but where those words were used it was understood to mean that delivery of the goods embraced in the contract might be made at any time during either of the months mentioned.

The principal grounds upon which the appellant asks a reversal of the judgment herein is that the court committed error in permitting the introduction of proof showing such trade custom, and particularly upon the ground that no such custom or usage was alleged in the answer. The appellant relies principally upon two cases recently decided in this court. (*Crown Embroidery Works v. Gordon*, 190 App. Div. 472; *Bahnsen & Co., Inc., v. Leaf*, 203 id. 618.) In the *Crown Embroidery Works* case the contract provision was somewhat different from that in the case at bar in that the delivery was specified to be made " in the months of June, July *and* August, 1918." Mr. Justice LAUGHLIN, writing for this court, in the course of his opinion, said: " There was no agreement to deliver a specified quantity in any month and there is no allegation with respect to when the deliveries were made, or to the effect that defendants were in default prior to the last day for deliveries, specified in the contract. It must be assumed, therefore, that defendants had until the last day of August to deliver the remainder."

The facts in the *Crown Embroidery Works* case would, therefore, seem to be not quite parallel to the facts in the case at bar. *Bahnsen & Co., Inc.*, v. *Leaf* seems also to be distinguishable from the case at bar. In the *Bahnsen* case, as in the case at bar, the contract provided that delivery was to be made " August/September/October." In that case the contract embraced the sale and delivery of twenty pieces of lining. No delivery of any part thereof was made during the month of August. On September 8, 1920, the plaintiff tendered eight pieces to the defendant, who refused them, and action was brought to recover damages for defendant's refusal to accept delivery under the contract. The trial court in the *Bahnsen* case held that the phrase, " Delivery, August/Sep-

**244** CLIFTON SHIRTING CO., INC., *v.* BRONNE SHIRT CO., INC.

First Department, May, 1925. [Vol. 213

tember/October," meant " Delivery, part during August, part during September, and the balance during October." On appeal from the judgment this court held in the *Bahnsen* case that the trial court in such construction had erred. In the course of the opinion Mr. Justice GREENBAUM, writing for this court, said: " There is no provision in the order for the delivery of the goods in installments. *It is,* therefore, *impossible to say that the parties contemplated the delivery of some goods each month,* since that would involve an arbitrary interpretation of the order, that plaintiff was bound to deliver at least one piece in August, one in September, and the balance in October." (Italics are the writer's.)

Had it been shown in the *Bahnsen* case, as in the case at bar, that there was a recognized usage and custom of the trade that the use of such words implied a delivery of a portion of the goods in each month, it might have been possible for this court to say " that the parties contemplated the delivery of some goods each month," and a different result might have been reached in that case. I am of the opinion that the expression, " Delivery June, July, August," was far from clear as to its meaning. Had the parties intended that delivery prior to August thirty-first would be sufficient under the contract, the contract could have much more clearly expressed such intention; and where the words, " June, July, August," were used, I am frank to say that in my opinion the parties contemplated some delivery during each of those months. At least the expression, " Delivery June, July, August," was ambiguous, and I think it was proper to give evidence to clear up the ambiguity. Had there been an express understanding and agreement between the parties that by the use of the expression, " Delivery June, July, August," it was meant and understood that one-third of the goods or some other proportion thereof should be delivered in each of those months, the court certainly would have been compelled to receive evidence showing such agreement and understanding between the parties in clarification of the ambiguous expression used. There must have been some reason for specifying the three months named in the contract. Had the parties intended that delivery might be made at any time within the three months, they would have so stated, or, at least, would have stated that delivery was to be made between June first and August thirty-first. While the courts have, in some cases, held that when contracts have barely stated that deliveries of goods were to be made in certain specified months and when there was an absence of proof that the parties contemplated that delivery of any part of the goods should be made in any of the months mentioned, delivery was good if made in either month, I know of no such decisions

where it appeared that the parties actually contemplated that deliveries should be spread out over the months specified, a part delivery to be made in each of the months. The intent of the parties might be shown by proving an express agreement, if one had been made, or, as in the case at bar, by showing a general usage and custom in the trade as to the import of the words used in the contract. The parties must be deemed to have known of existing trade usages and to have understood that the words used had a well-defined trade meaning, and to have assented thereto. The witnesses testifying for the plaintiff and those for the defendant all agree that the words used had a real trade significance and meaning, but they differ as to what that meaning was. The parties to the contract must be deemed to have used the words in the light of the trade usage, which the jury found was as testified to by the witnesses for the defense.

The appellant contends that even assuming the existence of a trade usage and custom as claimed and testified to by the witnesses for the defendant, the same could not be proved in the absence of an allegation of such usage or custom in the defendant's answer. I do not think such an allegation was necessary. The situation is quite different from that of a case where a plaintiff, intending to rely on a custom as interpretive of a contract on which he sues, would be required to plead such custom. Here the evidence of custom was offered and received to clear up a manifest ambiguity in the terms of the contract, and for no other purpose. In *Fuller* v. *Robinson* (86 N. Y. 306), Judge ANDREWS, writing for a unanimous Court of Appeals concerning the admission of evidence of usage or custom in trade, said (at p. 309): " Evidence of a usage, or custom of trade, is frequently admitted to annex unexpressed incidents to contracts, *or to explain ambiguous and doubtful phrases, in written agreements.* * * * Evidence of the custom of a particular trade is admitted, to supply what is not expressed, *or to explain what is doubtful,* upon the presumption that persons engaged therein, are acquainted with, and understand and tacitly assent, that their contracts shall be interpreted in the light of the recognized usages." (Italics are the writer's.)

I am, therefore, of the opinion that the court properly received evidence offered in behalf of the defendant to show the existence of such a trade custom, and that by the use of the words in question the parties meant, under such usage and custom, that a substantial proportion of the goods embraced in the contract were to be delivered during each of the three months mentioned. The three witnesses offered by the plaintiff in rebuttal of this testimony all testified as to the existence of a trade usage or custom where such words were

used in a contract, but differed from the four witnesses sworn by the defendant as to what the trade custom or usage was. The testimony in this respect presented a question of fact which was submitted to the jury by the trial court, and the jury, as reflected by the verdict, evidently believed the testimony of the defendant's witnesses. I am unable to say, as claimed by the appellant, that the verdict in this respect was against the weight of the evidence. I do not think any error was committed by the trial court in receiving parol evidence as to the meaning of the term of the contract, "Sample Pc. April," and in permitting the defendant to show in explanation thereof what the actual understanding was and the necessity to the defendant that samples of the fancy goods be furnished in accordance with such understanding.

No part of the goods covered by the contract was delivered prior to September, 1920. On September fourth the plaintiff shipped to the defendant eighty-one of the ninety pieces of the fancy cords, and on September twenty-third shipped the remaining nine pieces, all of which were refused by the defendant. Even though the tender of the eighty-one pieces of the goods on September fourth was within a reasonable time, such tender was not good under the provisions of section 125 of the Personal Property Law (as added by Laws of 1911, chap. 571), known as the Sales of Goods Act, which provides that where a seller delivers to the buyer a quantity of goods less than he contracted to sell, the buyer may reject them. The court left to the jury as a question of fact whether the plaintiff, under the terms of the contract, had made delivery of the goods in suit within a reasonable time, charging the jury that if such delivery was made within a reasonable time under the terms of the contract, then their verdict should be for the plaintiff for the difference between the contract price and the market price at the time and place of delivery. The jury found for the defendant upon this question, that the delivery was not within a reasonable time.

The judgment appealed from should be affirmed, with costs.

McAvoy, J., concurs.

Judgment reversed and new trial ordered, with costs to appellant to abide the event.