Jack Stanislaw, J.
Berger-Tilles Leasing Corp. (“ B-T ”), the assignee of leasehold mortgagees, brought this action for a decree that defendants execute and deliver a new lease of the premises. Defendants, York Associates, Inc. and Southern Associates, Inc. are, respectively, the former and the present owner of the property. They move for summary judgment dismissing the complaint and discharging the notice of pendency herein. Without going into any arithmetic detail, suffice it to say that the property is very valuable and the rental and mortgage amounts involved of corresponding magnitude.
A complex history of litigation has resulted here in an extensively argued and documented motion based upon the terms of the leasehold agreement, the effect of previous judicial mandates and determinations, and the relationship between the one and the other.
It all started April 9,1963 when York wrote to its then tenant, South Bay Center, Inc., declaring the lease in default for nonpayment of rent and taxes and for failure to repair. At 21(a) (iii) of the lease the landlord is given the privilege of notifying the tenant of its default in the payment of any moneys. *492 With default continuing for 10 days thereafter the landlord may serve a five-day written notice of cancellation and termination, effective at the end of that fifth day. On April 22, 1963 the landlord sent this second notice, in effect a conditional limitation. A copy of the termination notice was forwarded to plaintiff’s assignors, the then leasehold mortgagees.
When plaintiff’s assignors got a copy of the notice dated April 22,1963, it was by reason of the terms of lease paragraph 34(f). That clause further gave the leasehold mortgagees an option to obtain a new lease, upon terms and conditions there specified. One of these terms was that the leasehold mortgagees, within 30 days after service of notice of termination, request that a new lease be entered into by the landlord with them as tenants.
Before anyone could do anything, assuming such inclination, tenant South Bay obtained a show cause order containing a restraint pending its simultaneously instituted action for judgment declaring that it was not and had not been in default, and its motion for a temporary injunction. That was on April 26, 1963. On June 7 the motion for temporary injunction was granted, the mortgagees and the landlord each knew it and knew the other knew. Their respective positions then were essentially what they are here.
Since B-T’s predecessors did not react to the April 22 notice within 30 days (lease, 34[f]) York and Southern now claim that the “ new lease ” option in the leasehold mortgagees has lapsed. The plaintiff comes down heavily on the restraining order and preliminary injunction sandwiching the effective option date. These limitations placed upon York’s activities by its tenant allegedly explain and justify the failure of the leasehold mortgagees to request a new lease. Although not privy to the underlying landlord-tenant action, plaintiff points out that its request had to be founded upon a prior termination of the original lease which, because of the restraint and the later injunction, could not and did not take place. York sees no excuse of plaintiff’s timely performance of the terms of the lease, its own disability to respond notwithstanding.
The landlord-tenant action came to trial, decision was rendered July 30, 1964, and judgment thereon entered September 15, 1964. This judgment was subsequently affirmed. In June of 1965, after all appeals had been disposed of, plaintiff notified York that it desired execution of a new lease. York refused, partly because plaintiff was at that time not the leasehold mortgagee of record. Assignment to B-T was subsequently recorded and the request for a new lease repeated and refused. Then, not unexpectedly, this action followed.
*493 An examination of the specifics of the restraint, the injunction pendente lite, and the judgment is necessary. The first two, similarly phrased, in pertinent part provide prohibition against York’s “ cancelling and terminating or instituting any action to cancel or terminate ” the lease. In the declaratory judgment of September 14, 1964 it was decreed that the lease terminated April 22, 1963 as a result of the default, and then final, notice by York to its tenant, effectively served so as to conclude South Bay’s status under the lease. The preliminary injunction was vacated and possession awarded York.
Defendants emphasize the fact that although the judgment itself is dated September, 1964, it specifically relates the termination as having occurred April 22, 1963. This, they argue, means that B-T’s option expired ipso facto 30 days after that. On the other hand plaintiff, with somewhat more attractive logic, asks how it might have opted in the face of the restraints which had been placed upon defendants vis-a-vis the lease and the landlord-tenant relationship thereunder. Although plaintiff did have notice as required by the lease, and assuming it for a moment to have been proper notice, its prerogative was to make written request within 30 days. That request, according to the same part of the lease, then mandates (“ shall ”) that the landlord enter a new lease with the leasehold mortgagee. From the security of the present point in time, well beyond the conclusion of the litigation related to the injunction, defendants are, in effect, conceding a past (and now extinct) ability once possessed by plaintiff’s predecessor to force them into contempt.
The best that can be found on this issue is an 1878 Court of Appeals case which has been resting quietly and pretty much unnoticed for the most part since then. In Wilkinson v. First Nat. Fire Ins. Co. of Worcester, Mass. (72 N. Y. 499) an outstanding injunction was found to have no effect upon the running of a limitation period. The parties here have probed the decision exhaustively so as to relate it to their respective positions, all the more so because of a dearth of any other case in, or even near, the point. Wilkinson, an assignee, argued that an injunction outstanding against the defendant insurer, procured by a third party, abated the contractual limitation of time within which the insured could sue on the policy. The court noted, in passing, that the defendant insurer ought not be deprived of a limitation in the absence of its own contribution to its existence, but rather that it might have proceeded notwithstanding the injunction and resolved the possible contempt issue subsequently. The holding of the case, though, simply was that the injunction, by its terms, did not operate to prevent timely suit by the *494 insured. This conclusion was reached at least in part because the plaintiff in the injunction suit could not be supposed to have intended such a result, which was not injurious to its own rights in any way (see, also, Crown Embroidery Works v. Gordon, 190 App. Div. 472). Thus, about the best that can be said for our lonesome precedent is that it is not too far off the mark here.
A temporary injunction preserves the status quo, in this instance the landlord-tenant relationship. Defendants do not alter or defeat the plaintiff’s present utilization of the judicial mandate as a basis for its inaction, based upon impossibility of performance, by references to cases in sister States. A defendant urging a third-party injunction against it for the same purpose, to excuse performance, does not succeed where it demonstrates no effort to dissolve the injunction (Peckham v. Industrial Securities Co., 31 Del. 200). Furthermore, it is vaguely possible that B-T’s assignors, with notice of the orders, might have been subject to sanctions themselves for participating in the violation thereof (7 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 6301.25). In any event, this much is certain: whatever the leasehold mortgagees could do to activate their option, defendants were without an ability to respond in accordance with the terms of the lease. Otherwise they would have been proceeding as though the lease had actually and already been terminated, something expressly forbidden by the third party’s restraint and injunction. Aside from that prohibition they also would have then become landlord to two tenants for a single leasehold. Exercising the usual excellence of hindsight defendants underline that the final judgment, some 15 or so months later, terminated the lease retroactively, thereby vindicating their present position that strict performance was a reality all along. But this was not so at the time.
For the purposes of the landlord-tenant action the lease did terminate April 22, 1963. However, it does not follow that the leasehold mortgagees were also wiped out at that time, ex post facto. Of course, plaintiff’s assignors had originally received notice of the termination finally validated. Notwithstanding the likelihood that the September, 1964 judgment might have operated to resume the running of the leasehold mortgagees’ option period, problems were created anew by that same determination. Initial notice to plaintiff’s assignor was and had to be accompanied by a statement of sums then in default from the tenant (lease, 34[f]). Yet the judgment found an amount in default at considerable variance with that stated in the notice to the leasehold mortgagees. This, of course, easts the validity *495 of the notice as served in some doubt with regard to its effect on the option period.
As to that notice and statement itself as served on the assignors, it was apparently a copy of that served on the tenant, with a default amount computation attached. Plaintiff’s assignors were entitled to a copy of the notice of default (lease, 34[b]), but not of the notice actually terminating the lease thereafter (lease, 21 [a] [ni], 34[f]). That last notice, effective in five days, resulted in termination and cancellation without further ado. But the leasehold mortgagee’s option only arises upon a “ notice of such termination ”. Insofar as the option-inducing clause (34 [f]) begins with the words “ In the event of the termination of this lease ” it more reasonably appears to require a notice from the landlord succeeding the expiration of the five-day period, and not merely a copy of the notice culminating in that termination. The landlord’s duty seems to be to serve a notice of an actual termination, which is most logically a notice of that which has happened rather than of that which will happen.
Our inclination is doubtless apparent, that most of the issues relating to the construction and effect of the lease itself do not involve factual conflict. Yet to the extent of defendants’ defenses based upon equitable principles, and encompassing the conduct of the respective parties following the conclusion of the litigation involving the former tenant, issues are raised which are not susceptible of disposition summarily. Therefore, the motion is denied.