ABE BRAUER, DOING BUSINESS UNDER THE NAME AND STYLE OF A. & C. BRAUER, APPELLANT, v. HARRY HYMAN, BARNET HYMAN AND BARNET WOLDIN, RESPONDENTS.

Submitted March 26, 1923—Decided June 18, 1923.

Plaintiff, A. B., sold to defendant H. H. "all that wine and liquor business * * * including the stock, fixtures, license, goodwill of said business, and everything therein contained and belonging to said business," for a consideration payable in installments, with agreement that upon payment in full being made a bill of sale should be given therefor. The Wartime Prohibition act of June 30th, 1919, went into effect while a portion of the consideration remained unpaid, and when a bill of sale for the busi-

ness could not, by reason of that act, convey legal title. *Held*, that there was an implied covenant in the contract to the effect that if performance became impossible by reason of the perishing of the business itself, and without fault of the party sought to be charged under the contract, no recovery could be had thereunder. *Held, further*, that in these circumstances, plaintiff having sued for the balance due on the contract, he was rightly nonsuited in the trial court.

On appeal from the Supreme Court.

For the appellant, *Kelsey & Ludwig*.

For the respondents, *Jacob Feinberg*.

The opinion of the court was delivered by

WALKER, CHANCELLOR. This was a suit in the Supreme Court, tried at the Hudson Circuit by Judge Speer, who nonsuited the plaintiff, who has appealed here from the judgment thereon.

Judge Speer in granting the nonsuit said, *inter alia,* that the contract was that of a business for the sale of alcoholic beverages, called in the contract *wines and liquors,* which beverages were required to be sold under a license procured from the public authorities; that the contract was legal when made because at that time the sale of alcoholic beverages was legal when conducted in accordance with the provisions of the law, but later certain acts were adopted, and for the purposes of this suit only one needed to be mentioned, and that was an act of congress, and therefore the supreme law of the land, called the *Wartime Prohibition act,* of June 30th, 1919, and that act made it illegal to sell any wines and liquors, &c.; that the contract provided that $900 should be paid down and that thereafter installments should be paid at the rate of $25 a month until the sum of $2,000 (the balance due on the contract) was paid, then the defendant would become entitled to a bill of sale from the plaintiff to transfer the title to the business, title having been reserved in the plaintiff until full

payment made; that as fast as the stock of wines and liquors should be sold to, and consumed by, the customers of the defendant, they should be replenished, and the replenished stock (which was to be purchased from plaintiff) should be the property of, and title thereto should remain in, the plaintiff; that when the bill of sale became due under the terms of the contract the plaintiff could not comply with the covenant to make the bill of sale because the law had made it illegal on the part of the plaintiff to transfer title to alcoholic beverages, &c., and therefore it was illegal for the plaintiff to go forward further with the contract, and likewise illegal for the defendant to go forward further with the contract; in other words, that there had arisen what is called in the later cases a commercial frustration of the contract; that the illegality in this case arose not by reason of the action of the parties, but by something entirely alien to them, namely, the act of the government.

In addition to the above facts it should be stated that Harry Hyman made the monthly payments of $25 each to and including August 4th, 1919, amounting in the aggregate to $1,100, which left $900 still due and owing by the terms of the contract, and for which this suit was brought. The plaintiff took the necessary steps to put the defendant in default, and then sued. The difficulty, however, was the inability of the plaintiff to make a valid sale, as called for in the agreement "of all that wine and liquor business * * * including the stock, fixtures, license, good-will of said business, and everything therein contained or belonging to said business."

It might be stated that while the Wartime Prohibition act made it unlawful to sell beverages the alcoholic content of which should be greater than two and three-quarters per cent., the business with which the parties dealt in this case was one for the sale of liquors whose alcoholic content was not limited by statute, and the prohibition was therefore as practically total as that contained in the so-called Volstead act, and it operated destructively on the business and on the contract underlying it.

The question was, Did the Wartime Prohibition act work a commercial frustration of the contract sued on. Judge Speer held that it did, and that the plaintiff's cause for action was gone. We think he reached the right result. After this cause was submitted to him, the case of *Massopust* v. *Lembeck & Betz, &c., Co.*, 94 *N. J. Eq.* 103, was decided. In that case a note was given by a saloon-keeper to a brewing company, which was to be unenforceable as long as the former purchased beer from the latter. Vice Chancellor Foster held that prohibition made performance of the agreement impossible, and, therefore, no recovery could be had upon the note. While the facts in these two cases differ, yet there is an analogy between them; the principle of the Massopust case being applicable to the one at bar.

In 13 *Corp. Jur.* 643, § 718, it is stated: "Where the contract relates to the use, or possession, or any dealing with, specific things in which the performance necessarily depends on the existence of the particular thing, the condition is implied by law that the impossibility arising from the perishing or destruction of the thing, without default in the party, shall excuse the performance, because from the nature of the contract it is apparent that the parties contracted on the basis of the continued existence of the subject of the contract."

In *Gouled* v. *Holwitz*, 95 *N. J. L.* 277, it was held in the Supreme Court: "In contracts in which the performance depends on the continued existence of a given person or thing, a condition is implied that the impossibility of performance arising from the perishing of the person or thing, without the fault of the person against whom the contract is sought to be enforced, shall excuse the performance."

We think it clear that an implied term of the contract sued on was that if prohibition of the liquor traffic should be enacted into law, and it has been, it would work a frustration of the contract, which would thereafter be unenforceable between the parties.

These views lead to an affirmance of the judgment.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TREN-
CHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK,
KATZENBACH, WHITE, HEPPENHEIMER, ACKERSON, VAN
BUSKIRK, JJ.   13.

*For reversal*—None.