RAJNER J. RANER, Plaintiff, *v.* ISAAC GOLDBERG, Defendant.

Supreme Court, Kings County, April 11, 1925.

**Landlord and tenant — action for rent and for return of amount deposited as security — landlord constructed premises for tenant's use as dance hall — tenant, after being in possession for two months, vacated on denial of application for license to operate dance hall — landlord entitled to rent for period of occupancy and amount deposited for security — final order on default in summary proceedings to dispossess does not conclude plaintiff.**

A tenant, in an action for the return of rent paid a landlord for the first month's occupancy of premises and for the amount deposited as security for rent, is neither entitled to said rent nor the deposit, where it appears that the landlord constructed the premises for the tenant's use as a dance hall and that the tenant, after being in possession of the premises for two months, vacated them on being denied an application for a license to operate a dance hall, since he was obligated to pay the rent regardless of whether or not he was able to obtain a license.

The fact that the landlord obtained a final order on default in summary proceedings to dispossess, predicated on non-payment of rent for the second month of the term, does not conclude the plaintiff, where the defense of *res judicata* failed in the proof as to jurisdiction of the court which made the final order.

MOTION by plaintiff to set aside verdict for defendant.

*Dunn & Daly* [*John G. Miller* of counsel], for the plaintiff.

*Holtzman, Mendes & Krisel* [*Jacob L. Holtzman* of counsel], for the defendant.

GAVEGAN, J.:

For the purpose of conducting it as a dance hall, plaintiff took a lease for five years of a loft at Eighth avenue and Twenty-fifth street, Manhattan, but his application for a license was denied, and he brings this action to recover $3,000 deposited as security, as well as $500, the amount paid as rent for the first month. Other claims made by each party were withdrawn at the trial. Following his failure to appear upon the return of a precept in summary proceedings based on non-payment of the rent for the second month of the term, and after several days in the third had elapsed, plaintiff left the demised premises, of which he had been given the key and of which he was in possession preparatory to beginning business. The key was turned over to the landlord. The parties covenanted that the tenant's obligations were to survive the ending of the term following desertion of the premises, dispossession, and the like. Defendant, the lessor, had the building under construction when a real estate broker opened negotiations which led to the execution of the lease and to the plans for the improvement being changed to render the loft usable for plaintiff's purpose under the laws, regulations and ordinances having application. Defendant agreed to and did so construct the premises that they could be so used, obtaining from the building department a certificate of occupancy as a dance hall. There is no reason to believe that the license for such occupancy was denied by reason of anything which he did or failed to do. The principles applied in *New Chester Theatre Corporation* v. *Bischoff* (210 App. Div. 125) are not applicable. Plaintiff testified: " It was up to me to get the license." By this he meant, evidently, that after the lessor had rendered the premises structurally licensable, it was the lessee's work to proceed to obtain the license. The building is located on a corner of a very busy avenue, in a section where the intended use might not be considered offensive or to be such as would arouse opposition from the neighbors. But there is a church near by, and on plaintiff's putting up a sign announcing that a dance hall would be opened, the neighbors and parishioners of the church did so earnestly oppose the license being granted that the lessee's application for it was denied by the commissioner of licenses after a public hearing. It was denied on the last day of the second month of the term.

Plaintiff's main reliance is the rule adopted by the courts of this State in liquor saloon cases, such as *Doherty* v. *Eckstein Brewing Co.* (115 Misc. 175; 198 App. Div. 708) and *Kaiser* v. *Zeigler* (115 Misc. 281) after the National Prohibition Act (41 U. S. Stat. at Large, 308, chap. 85, tit. 2, § 3), known as the Volstead Act, had made the sale of intoxicating liquor illegal. (See, also, *Krell* v. *Henry*, L. R. [1903] 2 K. B. 740.)

1. There is no doubt that it was the intention of the parties that the demised premises were to be used as a dance hall. The other uses mentioned in the lease were incidental. But it was competent for the lessee to contract to pay rent, regardless of whether he would or would not be able to obtain a license to use the loft for the purpose intended. The question is whether he took that risk. He knew that he had to obtain a license. He knew that it might be denied to him, either properly or improperly. If improperly denied, his legal recourse would be against the licensing officer, and it would not be to abandon performance of the contract on his part. If the license was improperly denied, he has no standing in this action. It is more difficult to determine the rights of the parties on the assumption that it was properly denied. But the best we can now say for plaintiff is that he entered into the lease knowing that the license might be legally denied to him, though the lessor should perform fully by so constructing the loft and the building generally as to leave no physical or structual condition which would cause the lessee's application for the license to be denied. He knew what might happen, and he did not stipulate that he would be relieved from performance on his part should he be denied the privilege of conducting a dance hall. With his eyes open he took the risk. For the reasons stated, the view taken in the New York cases which have been cited cannot be taken here. The use in itself is not illegal, no more so than operating a theatre or practicing law or medicine. Plaintiff gambled on conditions of an uncertain character. A contractual obligation is often purchased with knowledge that it must be paid for though it *may* not benefit the obligee. I believe this to be such a case. It is not necessary to inquire as to whether plaintiff needlessly aroused the opposition of the neighborhood.

2. Even if a different view were taken as to whether it was intended he would take such risk, plaintiff's position would, in my opinion, be untenable. It implies a finding of impossibility of performance, While it does not imply absolute certainty that performance will continue to be impossible, it is nevertheless true that the assurance of such continuance must be very satisfactorily and very definitely

established. In a situation such as developed in this case, the neighbors might withdraw their opposition. They might become convinced that plaintiff's sign did not forebode an objectionable establishment. Again, the commissioner of licenses might change his mind, or even be mandamused if acting arbitrarily. The necessary permit might be denied for reasons entirely personal to the tenant, though not provable as such. A finding of " impossibility " of performance would not be so well grounded as in the liquor saloon cases. Here it all comes down to the opinion, for the time being, of the person who happens to hold public office. The finding referred to would be too dubiously supported to be the basis of a judgment at law.

3. There are no figures in the record indicating the cost of the venture either to the landlord or to the tenant. The cost of changing the plans and finishing the building to suit the lessee might have been greater than the total amount expended by plaintiff for all purposes in connection with the matter. This may be worth while mentioning, though I do not propose to discuss or to attempt to work out the rule of justice evidently underlying the decisions in New York and in other States which relieved from their obligations tenants of liquor saloons discontinued on account of the prohibition legislation, decisions generally at variance with established landlord and tenant law, and for this reason rejected in a number of jurisdictions. (See 22 A. L. R. 821; L. R. A. 1917C, 935; 34 L. R. A. [N. S.] 773; 23 id. 497; 19 id. 964.)

4. In any event plaintiff would have to pay rent while he had possession, preparatory to opening for business and before the license was denied.

5. Defendant asserts that the final order by default in the dispossess proceedings concludes plaintiff. This I do not deem it necessary or proper to discuss further than to say that I believe the defense of *res judicata* failed in the proof as to jurisdiction of the court which made the final order. The affidavit of service of the precept in summary proceedings does not aver facts which justified the non-personal service by tacking the precept on the door of the premises, possession of which was sought.

The motion to set aside the verdict for defendant will be denied. Settle order.