LION BREWERY OF NEW YORK CITY, Plaintiff, v. PATRICK LOUGHRAN, Defendant.*

Supreme Court, New York County, February 6, 1928.

Mortgages — chattel mortgage — defendant executed chattel mortgage relying upon implied condition that he might lawfully enjoy use of premises and fixtures mortgaged for sale of intoxicating liquors — implied covenant existed that if performance of contract became impossible, no recovery could be had thereunder — enactment of National Prohibition Act made performance of contract impossible — defendant not liable.

Defendant, who executed a chattel mortgage relying upon an implied condition that he might lawfully enjoy the use of the premises and fixtures mortgaged for the sale of intoxicating liquors, is not liable on said mortgage, since the performance of the contract was rendered impossible by the subsequent enactment of the National Prohibition Act.

No recovery can be had under such a mortgage, in the face of an implied covenant to the effect that if performance became impossible without fault of the party to be charged, no recovery could be had thereunder.

It was the intent of the parties that the debt and mortgage were to run concurrently, since they arise out of the same document, and one is plainly collateral to and concurrent with the other.

The fact that the ratification of the Eighteenth Amendment to the United States Constitution and the enactment of the Volstead Act, were furthest from the minds of the parties, would only substantiate the contention that law and equity should read into the contract the implied condition claimed by defendant.

MOTION for summary judgment under rule 113 of the Rules of Civil Practice.

*Fitch & Grant*, for the plaintiff.

*Louis A. Cuvillier*, for the defendant.

COTILLO, J. The action was one brought to recover of the defendant the balance due on a chattel mortgage executed under seal by the defendant in favor of the plaintiff. The defendant admits the making of the chattel mortgage and the agreement to pay. He has, however, raised in his answer as an affirmative defense, the inability to complete the payments under the contract because of the enactment of the National Prohibition Act. He further pleads as a defense that he executed the said chattel mortgage relying upon the implied condition that he might lawfully enjoy the use of the premises and the fixtures mortgaged for the sale of intoxicating liquors.

An examination of the chattel mortgage itself would seem to support the defendant's contention. Among the fixtures and things mentioned in the mortgage as sold, is the liquor tax certificate

Supreme Court, February, 1928.                    [Vol. 131

issued by the Special Deputy Commissioner of Excise without which the defendant would have been unable to conduct his business. The mortgage also covered, according to the schedule attached to and made part of the instrument, the following fixtures: one bar; one bar back, mirrors, etc.; one bottle case; one set beer pumps, with taps, pipes and all connections.

The plaintiff further substantiates the defendant's claim that the sum due under the mortgage was to be paid out of the sale of beer, in the affidavit of one Pasquale Ferri, the manager of the plaintiff, submitted in support of the motion. Ferri in his affidavit states as follows: " On or about July 12, 1926, the defendant commenced business in the *saloon* at 145 East 125th Street, corner of Lexington Avenue; that the Lion Brewery of New York City sold to the defendant beer at various times, certain discounts were credited on account of the chattel mortgage, reducing the same to the amount sued for."

I believe the defense raised by the defendant is sound and sufficient as a matter of law.

" Where a contract for sale of a liquor business was made before prohibition became effective and title remained in the seller until full payment was made in installments no recovery can be had for the unpaid installments due after prohibition, as there is an *implied covenant* to the effect that if the performance of the contract becomes impossible by reason of the perishing of the business itself, without fault of the party to be charged, no recovery could be had thereunder." (Blakemore Prohib. [3d ed. 1927] p. 87, ¶ 115, citing *Brauer* v. *Hyman,* 98 N. J. Law, 743; 121 Atl. 667.)

There seems to the court little difference in the selling of a liquor business and the mortgaging of a liquor business in the same terms as the mortgage made to the plaintiff in this case. The sale of the business could not, under the circumstances, be broader than this particular mortgage which included not only the fixtures and the liquor tax certificate, but even the lease on the premises.

The courts can properly take judicial notice of the manner and custom in which breweries conducted their business prior to 1919. They obtained every possible security either by notes, chattel mortgages, mortgage on the lease, assignment or otherwise, leaving the owner of the saloon the title of proprietor in name only, when in fact, he was an agent of the brewer for the consumption of the brewer's beer.

While the court appreciates that the stockholders of these brewery companies have some rights, and their contract should, if possible, be respected, nevertheless a court of equity cannot overlook the principle that, where the contract entered into between the parties

relates to the use or possession of a business in which the performance as in this case necessarily depends on the existence of the particular business, the condition is implied by law that impossibility of performance excuses default upon the part of the parties to the contract.

I cannot agree with the plaintiff's claim that it was not the intent of the parties that the debt and mortgage were to run concurrently.

A bond and mortgage are two separate instruments, although one may be collateral to the other. (*Stoddard* v. *Hart*, 23 N. Y. 556.) In the case at bar the debt and mortgage are bound very closely together. Indeed, they arise out of the same instrument, so I think that the bond and mortgage must be taken together because both arise out of the same document, and one is plainly collateral to and concurrent with the other. The plaintiff's attorneys realizing the force of this contention abandon their claim for relief under the chattel mortgage which refers to the liquor tax certificate and which plainly admits the use of the premises as a saloon, by bringing suit on the debt alone. I do not think this can avail them, for the reasons stated.

The plaintiff contends in the supporting affidavits and also in its brief, that the action in which this motion is brought is one in which it elected to sue on the debt. It has pleaded in its complaint and has given as evidence of the debt the chattel mortgage and has annexed it to and made it a part of the complaint. The chattel mortgage by its very terms and by the articles mortgaged, displays little if any evidence to distinguish it from an outright sale of a liquor business. It, together with the method of payment (that is, the payment of the debt by the commissions earned by the sale of plaintiff's beer, which sales, from plaintiff's affidavit, took place as late as July 21, 1921, two years after the enactment of the Prohibition Law), show that it was a debt to be liquidated gradually from the use and consumption of its beer. The debt was concurrent with the giving of the mortgage and it seems to the court to be inseparable from the mortgage itself.

The plaintiff argues that at the time the instrument was executed there was no thought of prohibition in any one's mind. This argument to the court's mind, strengthens the position of the defendant and his defenses. An *implied* condition would be unnecessary if the expectancy that the condition would arise was in the minds of the contracting parties. The fact that the enactment of the Prohibition Law was furthest from the minds of the parties would only be a stronger argument that law and equity should read into the contract the implied condition claimed by the defendant.

As I understand it, the doctrine of implied conditions in contract law is a creation of the courts, by way of judicial fiction, in order to give to the defendant an advantage which logically and equitably should be given to him by way of defense.    (See Professor Williston's note in Wald's Pollock Cont. 323, n. 8.)    The doctrine of conditions implied in law dates back to the decision of Lord MANSFIELD in 1773, sitting in the King's Bench, in the case of *Kingston* v. *Preston*, cited in *Jones* v. *Barkley* (2 Doug. 684, 689).    It is a creation of the courts in order to do justice, and was invented in order to overcome the hardships of the strict enforcement of the letter of contract law.    An express condition is, of course, a real condition actually created by the parties and intended by them, whereas the condition *implied in law* is an invention of the courts created by the law in an endeavor to do justice by the parties.    In other words, where an unforeseeable and unforeseen contingency arises which the parties, naturally enough, failed to provide for or to *contemplate*, the law in such an event will think for them along equitable lines and will imply such conditions as would have been in the minds of the parties had they *thought* of them.

A classic illustration in England is *Baily* v. *DeCrespigny* (L. R. 4 Q. B. 180, decided in 1869).    An illustration nearer home is *Stewart* v. *Stone* (127 N. Y. 500, decided in 1891) and also the celebrated case of *North German Lloyd* v. *Guaranty Trust Co.* (244 U. S. 12).    In the case of *North German Lloyd* v. *Guaranty Trust Co.*, a shipmaster agreed to carry a cargo of gold from the United States to Germany at a time before the World War broke out. When war broke out, which was unforeseeable at the date of the contract, the shipmaster did not perform because of his well-founded fear of capture by the ships of a hostile power.    The Supreme Court of the United States, reversing the lower courts, excused non-performance by the defendant shipmaster, implying a condition in his favor.

The situation calling for the reading of an implied condition into a contract involving a liquor saloon has been before this court several times.    In the case of *Doherty* v. *Eckstein Brewing Co.* (115 Misc. 175) the Appellate Term stated the law as follows: " The general rule is that where the law creates a duty and a person without fault on his part is disabled from performing it, failure to perform is excused; but where a party by contract creates a duty upon himself, he is bound to make good if he can, notwithstanding any inevitable accident or unforeseen contingency; but the rule has no application where performance becomes impossible by a change in the law or as a result of action taken under governmental authority."

*Doherty* v. *Eckstein Brewing Co.* (*supra*) was unanimously affirmed

by the Appellate Division, First Department (198 App. Div. 708). In the Appellate Division decision written by Mr. Justice LAUGHLIN, it was held (p. 712): " There is no distinction in principle on this point between a contract the execution of which is unlawful at the time it is made and which is void * * * and one where by a subsequent change of law, further performance of the contract becomes unlawful."

The rule is well stated by Parsons on Contracts (Vol. 2 [9th ed.], p. 827): " That the illegality of a contract is in general a perfect defense, must be too obvious to need illustration. It may, indeed, be regarded as an impossibility by act of law; and it is put on the same footing as an impossibility by act of God; because it would be absurd for the law to punish a man for not doing, or, in other words, to require him to do, that which it forbids his doing. Therefore, if one agrees to do a thing which it is lawful for him to do, and it becomes unlawful by an act of the Legislature, the act avoids the promise."

In the case at bar, on principles of equity, justice and fair dealing, it seems to me a condition should be implied excusing the proprietor of the saloon for failure to perform his agreement. When he made the contract and incurred the debt and gave the chattel mortgage, the enactment of the prohibition amendment was both unforeseen and unforeseeable. Literally and practically it was, therefore, impossible for him to use the premises for the purpose intended by the contracting parties. The liquor tax certificate referred to in the chattel mortgage is concrete evidence that the intention of the parties was that the purchaser was buying them for a saloon. When this use of them became impossible it follows that the law should imply a condition relieving the defendant from liability for non-performance.

In *Brauer* v. *Hyman* (98 N. J. Law, 743) the Court of Errors and Appeals, Chancellor WALKER writing, held as follows: " We think it clear that an implied term of the contract sued on was that if prohibition of the liquor traffic should be enacted into law, and it has been, it would work a frustration of the contract, which would thereafter be unenforceable between the parties." In arriving at this decision Chancellor WALKER cited *Massopust* v. *Lembeck & Betz Eagle Brewing Co.* (94 N. J. Eq. 103). In the *Massopust* case Vice Chancellor FOSTER held there could be no recovery on a note given by a saloon keeper to a brewery which was to be unenforcible as long as the former purchased beer from the brewery.

Motion for summary judgment denied.