858 F.2d 702
 57 USLW 2303
 MITCHELL, GREEN, PINO & MEDARIS, P.C.; John Medaris,
Plaintiffs-Appellees,
v.
UNDERWRITERS AT LLOYD'S OF LONDON, Lloyd's of London, Inc., Defendants,
Bankers Insurance Service Corporation, Stephen James
Burnhope, Excess Insurance Company, Ltd., and
English and American Insurance Company,
Ltd., Defendants-Appellants.
 No. 87-7619.
 United States Court of Appeals,
Eleventh Circuit.
 Oct. 26, 1988.
 
 Stephen A. Rowe, Lange, Simpson, Robinson & Somerville, Birmingham, Ala., for defendants-appellants
 Stephen D. Heninger, Hare, Wynn, Newell & Newton, Birmingham, Ala., for plaintiffs-appellees.
 Appeal from the United States District Court for the Northern District of Alabama.
 Before KRAVITCH and CLARK, Circuit Judges, and NICHOLS*, Senior Circuit Judge.
 CLARK, Circuit Judge:
 
 
 1
 Stephen James Burnhope, Excess Insurance Co., Ltd., English and American Insurance Co., and Bankers Insurance Service Corporation[1] appeal from a $40,000 judgment against them on an indemnity bond they issued to Leedy Mortgage Company ("Leedy"). The bond indemnified Leedy for any amounts not exceeding $5000 (per director) that Leedy might pay to reimburse its directors for attorneys' fees the directors might incur defending suits against them in their official capacity. Appellees, Mitchell, Green, Pino & Medaris, P.C. and John Medaris, are attorneys who successfully defended eight Leedy directors in just such a suit and yet have never been paid. The district court permitted Appellees to stand in the shoes of Leedy and recover directly on the bond. While recognizing the lopsided equities the district court faced, we reverse.
 
 
 2
 On December 21, 1982, Appellants issued a blanket bond to Leedy Mortgage Company. The bond provided the following coverage:
 
 12. DIRECTORS AND OFFICERS LEGAL EXPENSE
 
 3
 IT IS AGREED that this bond indemnifies the Assured to an amount not exceeding $5000 for such payment of money as the Assured shall make to reimburse any director or officer of the Assured for reasonable expenses and attorneys' fees necessarily incurred by him (while a director or officer of the assured or at any time thereafter) in defending any suit(s) to which he shall have been made a party by reason of his being or having been a director or an officer of the Assured during the term of this Bond provided that:a. In such suit(s) he is adjudged to have been not guilty of negligence or misconduct in the performance of his duties as a director or officer of the Assured.
 
 
 4
 b. The amount stated in this insuring clause No. 12 shall be the limit of the Underwriters' liability for all reasonable expenses and attorneys' fees incurred by any one director or officer of the Assured during each period of twelve calendar months commencing with the effective date of this Bond.
 
 
 5
 Record, Vol. I, Tab 19, Exh. B at 3. The bond also included a provision limiting any right of action to the named assured.
 
 G. RIGHT OF ACTION
 
 6
 IT IS AGREED that the insurance granted herein shall be for the exclusive benefit only of the Assured named herein, and that in no event shall anyone other than the said Assured named herein have any right of action under this Bond.
 
 
 7
 Id. at 4. The bond did not include any provision prohibiting its assignment.
 
 
 8
 In August 1983, Leedy was sued for fraud and other alleged misconduct in connection with several loans and mortgages the company handled. In September 1983, the complaint in that case was amended to add eight of Leedy's directors. To defend them, the Leedy directors hired Appellees. The Appellees were successful: each of the directors was granted summary judgment in his favor.
 
 
 9
 Appellees then sought compensation for their legal work from both Leedy and Appellants. Neither was willing to pay. Leedy had, sometime soon after the fraud suit was brought, filed a petition for reorganization under Chapter 11 of the Bankruptcy Code, and the bankruptcy trustee opposed the appellees' claim (filed on behalf of the directors).[2] Appellants insisted that the bond under which Appellees filed a claim was for the exclusive benefit of Leedy and thus did not warrant direct payment to Appellees.
 
 
 10
 Faced with this stalemate, Appellees moved the bankruptcy court (for the Eastern District of Pennsylvania) for an assignment or release of the proceeds of the bond. According to John Medaris, the individual appellee, Appellees agreed to withdraw their claims against Leedy if the court would grant the motion. After a hearing on the matter, the bankruptcy court issued the following order:
 
 
 11
 AND NOW, to wit, this 28th day of Jan., 1985, after Notice and hearing, it is hereby
 
 
 12
 ORDERED AND DECREED that the Motion of the Various Directors for assignment or release of insurance proceeds be and hereby is granted and that the aforesaid officers and directors are authorized to pursue any coverage which may be offered under the Mortgage Bankers Blanket Bond which is the subject of the above matter without prejudice to any rights of the Debtor and/or Trustee in said bond and subject to the terms and conditions in said bond.
 
 
 13
 Id., Plaintiffs' Exh. 1. At about the same time, Appellees obtained from the Leedy directors assignments of all their rights under the bond. See id., Vol. I, Tab 19, Exh. C.
 
 
 14
 After Appellees presented these documents to Appellants, Appellants continued to refuse payment on the grounds (1) that only Leedy could bring suit on the bond, and (2) even if Appellees could bring suit, a condition to Appellants' payment--Leedy's having paid the directors--had not been satisfied. The district court rejected both of these arguments. In the court's view, the bankruptcy court's order and the directors' assignments to Appellees allowed Appellees to succeed to Leedy's rights under the bond. And with respect to the condition that Leedy have paid the directors, the assignment order issued by the bankruptcy court could be deemed Leedy's "payment" to the directors. Alternatively, Leedy's bankruptcy was an "unforeseen contingency" permitting the court to imply such conditions as the parties would have if they had foreseen the bankruptcy, and the parties surely would have provided for Appellees' compensation had they known Leedy would be without assets to do so.
 
 
 15
 Even assuming that we could treat the bankruptcy order as a valid assignment to the Leedy directors[3] and then recognize the directors' assignments to Appellees, we are bound by precedent to reject the district court's holding that the condition of the bond was met by the bankruptcy court's assignment of Leedy's rights. The bond states plainly that Appellants are liable to reimburse the holder "for such payment of money as the Assured [Leedy] shall make to reimburse any director or officer of the Assured." Id., Vol. I, Tab 19, Exh. B at 3 (emphasis added). Leedy, however, never paid any money or suffered any equivalent financial loss in connection with Appellees' representation of the directors. As a result, Leedy itself was not entitled to recover under the bond. See Everhart v. Drake Management, Inc., 627 F.2d 686, 691 (5th Cir.1980) ("Liability of an indemnitor under a fidelity bond does not arise until the indemnitee has suffered a loss within the scope of the coverage."); American Empire Insurance Co. of South Dakota v. Fidelity & Deposit Co. of Maryland, 408 F.2d 72, 77 (5th Cir.1969) (an indemnity insurer's liability "does not arise until the insured has suffered a proven loss"). A loss could not thus spring into existence by the bankruptcy court's assignment of Leedy's rights under the bond. For by giving up its rights under the bond Leedy was essentially giving up nothing unless and until it had reimbursed the directors in some other way.
 
 
 16
 We also cannot accept, for several reasons, the district court's alternative holding that the "unforeseen contingency" of Leedy's bankruptcy entitled the court to ignore the condition that Leedy have suffered a loss by reimbursing its directors. First, as Appellants point out, the unforeseen contingency doctrine exists to protect contracting parties from unforeseen legislative action, acts of war, or acts of God, not from a failing by one of the contracting parties. Second, the doctrine has been invoked only to excuse non-performance, not to command performance by one of the contracting parties for the benefit of someone not a party. See, e.g., North German Lloyd v. Guaranty Trust Co., 244 U.S. 12, 22-23, 37 S.Ct. 490, 491, 61 L.Ed. 960 (1917) (contract to deliver goods to Germany rescinded due to outbreak of World War I); Davies v. Arthur Murray, Inc., 124 Ill.App.2d 141, 260 N.E.2d 240, 247 (1970) (plaintiff would have been able to rescind contract for dancing lessons had he proven that he had become physically incapacitated); Lion Brewery of New York City v. Loughran, 131 Misc. 331, 226 N.Y.S. 656, 661 (Sup.Ct.) (mortgage to be paid from beer sales invalidated due to Prohibition), rev'd on other grounds, 223 A.D. 623, 229 N.Y.S. 216 (1928). Third, in both of the cases cited above in which this court has strictly enforced the "loss" requirement of an indemnity bond, Everhart and American Empire, the assureds had not suffered a loss precisely because they had gone into bankruptcy and were thus unable to pay their liabilities, and this court did not see fit to invoke the unforeseen contingency doctrine. Finally, the fact remains that Leedy took out an indemnity bond rather than a straight liability insurance contract, which undoubtedly would have given Appellees here a direct cause of action. See Pickett v. Carolina Casualty Insurance Co., 734 F.2d 792, 793 (11th Cir.1984). This militates against a finding that the parties intended for the attorneys representing the directors to be paid under the bond should Leedy go into bankruptcy and be unable to bear the costs of the directors' representation. Indeed, Appellants had every right to bargain on this contingency, and it is highly likely that Leedy's premiums were less than they would have been had Appellants assumed the greater risk a straight liability insurance policy would have presented.
 
 
 17
 In sum, Appellees cannot recover their fees directly from Appellants. We note, however, that during the pendency of this case, Appellees moved the bankruptcy court in Pennsylvania to direct the trustee to pay them (through the directors) on the grounds that the trustee would then be able to recover from Appellants. See Record, Vol. I, Tab 27, Exh. A at 2-3. We also note that despite his initial opposition to reimbursing the directors for their attorneys' fees, the trustee agreed to this course of action. See id. at 3. We are thus somewhat puzzled that the Appellees voluntarily dismissed that motion, see id. at 1, apparently in favor of continuing to pursue their claim in this action, and are comforted that our decision is not nearly as inequitable as it well might seem.
 
 
 18
 The judgment of the district court is reversed and the case is remanded for an entry of judgment in favor of Appellants.
 
 
 19
 REVERSED AND REMANDED.
 
 
 
 *
 Honorable Philip Nichols, Jr., Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation
 
 
 [1]
 On September 13, 1985, the parties filed a stipulation substituting Stephen James Burnhope, Excess Insurance Co., Ltd., and English and American Insurance Co. for original defendants Underwriters at Lloyd's of London and Lloyd's of London, Inc. Burnhope was one of the Underwriters subscribing to the bond and all the other Underwriters had agreed to be bound by the result reached in the case. Excess Insurance Co., Ltd. and English and American Insurance Co., Ltd. had subscribed to the bond for the portion not subscribed to by Lloyd's
 
 
 [2]
 It is not entirely clear whether the trustee opposed Appellees' claim on behalf of the directors because the company was without any assets to satisfy it or because he questioned whether the conditions of the bond had been met, or for both reasons. John Medaris, the individual appellee, testified that "part of the objection was such as the directors were not sued as directors," Record, Vol. II at 29, and that Leedy had no assets with which to make disbursements, id. at 29, 33, but an objection to the latter testimony was sustained because it was not within the witness' personal knowledge. See id
 
 
 [3]
 Appellants argue that the bankruptcy court's order could not serve as an effective assignment insofar as it authorized the directors "to pursue any coverage which may be offered under the Mortgage Bankers Blanket Bond ... without prejudice to any rights of the Debtor and/or Trustee in said bond and subject to the terms and conditions of said Bond." Record, Pl.Exh. 1 (emphasis added). Because we hold that even an effective assignment would not mean that Appellees could recover, we decline to decide this question